UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60268-CIV-COHN/SELTZER

THERMOSET CORPORATION, f/k/a
THERMOSET ROOFING CORP.,
a Florida corporation,

Plaintiff,

vs.

BUILDING MATERIALS CORP. OF AMERICA
d/b/a GAF MATERIALS CORPORATION,
a Delaware corporation, and ROOFING
SUPPLY GROUP ORLANDO, LLC,
a Delaware limited liability company,

Defendants.
_______________________________________/

ORDER ON PLAINTIFF THERMOSET'S MOTIONS

THIS CAUSE is before the Court on Plaintiff's Motion to Enforce Defendant Building Materials Corp. of America d/b/a GAF Materials Corporation to Comply with Court Order and for Sanctions (DE 103)[1] and Plaintiff's Motion for *In Camera* Review to Determine Whether Attorney-Client Privilege Applies to Certain GAF Documents and Whether GAF Waived the Privilege by Violating This Court's Order and Request for Hearing (DE 119).[2] These matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida.

[1] Defendant has filed a Response in Opposition to Plaintiff's Motion to Enforce and for Sanctions (DE 112), and Plaintiff has replied thereto (DE 113).

[2] Defendant has filed a Response in Opposition to Plaintiff's Motion for *In Camera* Review (DE 130), and Plaintiff has replied thereto (DE 138).

BACKGROUND

This action arises out of an allegedly defective roofing adhesive. Plaintiff Thermoset Corporation ("Thermoset") is a roofing contractor that was hired to install a roof system at the Lynden Pindling International Airport in Nassau, Bahamas (the "Project"). Defendant Building Materials Corp. of America d/b/a GAF Materials Corporation ("GAF") is a manufacturer of roofing materials and systems that Thermoset allegedly consulted to obtain specifications of appropriate materials to use for the Project. Defendant Roofing Supply Group Orlando LLC ("RSG") is a distributor of GAF's roofing products. Thermoset purchased certain roofing materials and components, including a particular water-based adhesive, from GAF, through RSG. Thereafter, the roofing material failed, allegedly as a result of a defective adhesive recommended by GAF and RSG. Thermoset alleges that it incurred substantial expense to repair and modify the roof. In its Amended Complaint, Thermoset asserts claims for breach of express and implied warranties and for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). GAF and RSG have denied the material allegations of the Amended Complaint and have asserted various affirmative defenses.

GAF'S COMPLIANCE WITH COURT'S NOVEMBER 18, 2014 ORDER

During the course of discovery, Thermoset propounded written discovery requests to GAF; GAF responded to these requests. Thereafter, Thermoset moved the Court to overrule GAF's objections and to compel better responses to certain of these requests, including Interrogatory No. 17 and Request for Production No. 34. Interrogatory No. 17 sought information as to "any complaints, demands, or allegations of defects, deficiencies or failures" on other projects of the same bonding adhesive that was used at the subject

Project. Request No. 34 sought production of documents relating to the same defects and deficiencies. In ruling on Thermoset's motion to compel, the Court found that the information and documents sought by these discovery requests were highly probative of Thermoset's claim that the subject roofing system's failure was attributable to the (alleged) defective adhesive. Accordingly, on November 18, 2014, the Court entered an Order (DE 79) requiring GAF to fully and completely answer Interrogatory No. 17 and to produce documents responsive to Request No. 34 by November 25, 2014. Thermoset subsequently agreed with GAF to extend this deadline to December 5, 2014.

On December 5, 2014, GAF served on Thermoset its answer to Interrogatory No. 17 and produced a spreadsheet and approximately 1,000 pages related to 21 other alleged roof failures caused by the same adhesive at issue herein. Two weeks later, on December 19, 2014, Thermoset requested (by email) a conference to discuss information it believed was missing or incomplete; that conference occurred on December 22, 2014. Following the conference, Thermoset's counsel sent GAF's counsel an email outlining the missing information and the documents they had discussed.

The following day, on December 23, 2014, GAF supplemented its discovery responses and produced additional documents responsive to Request No. 34. These documents related to 3 other projects that it had previously identified, in addition to documents relating to one or two other projects identified by GAF's corporate representative in her deposition.

Subsequently, Thermoset requested that by December 29, 2014, GAF supplement its responses with respect to the two discovery requests at issue and/or confirm that no other information or responsive documents existed. On December 30, 2014, GAF's

counsel (by email) informed Thermoset's counsel that it was searching for additional information identified by Thermoset. More specifically, GAF's counsel clarified certain information relating to its prior responses, directed Thermoset to other previously produced documents, and advised that counsel was conducting a second search of guarantee files to determine whether other responsive documents existed. Thermoset then agreed to permit GAF until January 2, 2015, to produce information and responsive documents to fully comply with the Court's November 18, 2014 Order.

On January 6, 2015, GAF's counsel notified Thermoset's counsel that he had discovered additional archived documents relating to 4 projects that GAF had not previously believed to exist; GAF agreed to produce those documents by January 7, 2015.

THERMOSET'S MOTION TO ENFORCE COMPLIANCE
WITH COURT ORDER AND FOR SANCTIONS

On January 8, 2015, Thermoset filed the instant Motion to Enforce Defendant Building Materials Corp. of America d/b/a GAF Materials Corporation to Comply with Court Order and for Sanctions (DE 103). Thermoset requests that the Court compel GAF to comply with the Court's November 18, 2015 Order, which required GAF to fully and completely answer Interrogatory No. 17 and to produce all documents responsive to Request No. 34. According to Thermoset, GAF has failed to provide sworn interrogatory answers, has failed to provide documents relating to the resolution or settlement of claims for 6 projects, and has failed to clarify the specific additional documents that exist with respect to 11 projects. Thermoset also seeks monetary sanctions against GAF.

On that same date (January 8, 2015 – presumably after the filing of Thermoset's motion), GAF produced an additional 1,500 pages relating to 11 projects. According to

GAF, these documents did not relate to new projects; rather, they contained supplemental information with respect to previously identified projects. On January 16, 2015, GAF produced an additional 3,900 pages relating to another previously identified project.

In its January 20, 2015 Response to the Motion, GAF asserts: "Since the filing of Plaintiff's Motion, Plaintiff's counsel has reviewed GAF's supplemental Responses, and agrees that absent a few follow-up items, which the parties have agreed to resolve without involvement of the Court, GAF's supplemental Responses satisfy Interrogatory 17 and Request for Production 34." Response at 3-4 (DE 112). According to GAF, therefore, the only issue remaining for the Court's consideration is Thermoset's requests for monetary sanctions. In its Reply (DE 113), Thermoset does not dispute GAF's assertions. Accordingly, to the extent that Thermoset's Motion requests that the Court compel GAF to comply with its November 18, 2014 Order, the Motion is DENIED as moot. The Court will address only the portion of Thermoset's Motion that requests monetary sanctions against GAF for failing to timely comply with the Court's Order.

GAF argues that no basis exists for the imposition of sanctions because it timely served its responses and produced documents regarding other claims/projects. It additionally argues that upon discovering that additional responsive information existed, it supplemented its responses, as contemplated by Rule 26(e).[3] In support, GAF submits a sworn declaration of its paralegal, Gail Goldberg (DE 112-4). Goldberg declares that she

---

[3] Rule 26(e) requires, *inter alia*, that a party who has responded to discovery requests supplement its responses if it learns that in some material respect that the responses are incomplete or incorrect unless the additional or corrective information has been made known during the discovery process or in writing. The issue here, however, is not whether GAF's discovery responses were incomplete, but whether GAF complied with the Court's November 18, 2014 Order.

was asked to coordinate a search for any material complaints involving the water-based adhesive; the search of GAF's Material Complaint Resolution System database initially yielded 21 results (jobs). According to Goldberg, at that time she had no basis to believe that there existed any other claim file documentation for those projects. Goldberg further declares that on December 19, 2014, she was asked to coordinate a second search for additional documentation relating to those jobs. During the second search she learned that GAF separately maintained guarantee files; she then retrieved files associated with those jobs for which a guarantee had been issued.

Thermoset counters that GAF's argument that it "did not fail to timely comply with the Court's order . . . because it produced a substantial amount of information and documentation in its Responses, which it believed to be fully and completely responsive [and a]fter discovering that additional information existed, however, GAF quickly notified Plaintiff, and served supplemental responses" is misleading. Reply at 4 (DE 113) (quoting GAF's Response at 6 (DE 112)). Thermoset explains the misleading nature of the argument:

> [I]t is clear from the declaration of Gail Goldberg . . . that the only reason GAF "discovered" additional information after its initial supplemental production on December 5, was because Thermoset questioned the completeness of GAF's production. It was not until December 19 – the same day that Thermoset notified GAF that it believed information had been withheld, that Ms. Goldberg declares she "was asked to coordinate a second search for additional documents" causing her to "discover" additional documentation.
>
> The declaration of Gail Goldberg . . . does not provide any explanation (1) why the additional documentation produced on January 8 was not initially produced, (2) why GAF did not "discover" or even search for the additional documentation until Thermoset questioned the completeness of GAF's production

> or (3) whether GAF has conducted reasonable searches – let alone completed its searches – for information responsive to this discovery and court order. What does appear clear, however, is that GAF made no effort to search for this information prior to the Court's order on November 18, leaving GAF to scramble about a month before the [then scheduled] February 2 trial attempting to timely comply with the Court's order (which it clearly could not). Moreover, based on Ms. Goldberg's statement that she did not begin searching for additional information until or about December 19 – the same day that Thermoset initially advised GAF of the discrepancies in the production, it is clear that GAF had no intention of searching for additional responsive information until Thermoset questioned the completeness of the production. Based on GAF's response and the Goldberg Declaration, Thermoset is left to conclude, as this Court should, that GAF would never have "discovered" this additional documentation had Thermoset not questioned the completeness of GAF's responses. Given these circumstances, GAF did not fully and completely comply with the Court's order timely or otherwise.

Reply at 4-5 (DE 113).

The Court agrees with Thermoset. It was GAF's, not Thermoset's, responsibility to ensure that its document search was complete and that all documents were produced by the deadline set by the Court and then graciously extended by Thermoset. By the extended deadline, GAF produced approximately 1,000 pages responsive to Request No. 34. GAF conduced no further search for additional documents until Thermoset notified it that its initial production was incomplete. In at least 3 subsequent supplemental productions (on December 23, 2014, January 8, 2015, and January 16, 2015), all prompted by Thermoset, GAF produced approximately 4,400 additional pages – more than 4 times the initial amount produced by the (extended) deadline. Thermoset and its counsel were required to expend considerable time and expense in seeking to verify that GAF had complied fully with the Court's November 18, 2014 Order. The Court, therefore, finds that

sanctions are warranted. Accordingly, Thermoset's Motion for Sanctions (DE 103) is GRANTED. Within 14 days of the date of this Order, GAF shall pay to Thermoset attorney's fees in the amount of $500.

THERMOSET'S MOTION FOR IN CAMERA REVIEW OF DOCUMENTS AND REQUEST FOR HEARING (DE 119)

As part of its December 5, 2014 production of documents (to comply with the Court's November 18, 2014 Order), GAF provided to Thermoset (via a Dropbox link), documents organized into (electronic) folders, which were organized by project or contractor name. One of these folders was labeled "China Lake" and contained 3 documents, 2 which are at issue here – GAF 000745 ("GAF 745") and GAF 000815 ("GAF 815"). GAF 745 consists of a one page document with an email from GAF's in-house counsel Jean Marcus to GAF's Chief Executive Officer ("CEO") Bob Tafaro with a carbon copy to Helene Pierce, GAF's Vice President of Technical Sales, Codes & Industry Relations ("VP of Technical Services"). GAF 815 consists of a one page document with two separate emails between Tafaro and Pierce with a carbon copy to attorney Marcus. On February 2, 2015, GAF's counsel contacted Thermoset's counsel, asserting that GAF 745 and GAF 815 were protected from disclosure by the attorney-client privilege and that these documents had been inadvertently produced. February 2, 2015 email (DE 119-1). GAF additionally requested that Thermoset destroy the documents. Thermoset subsequently removed the documents from the case database and sequestered them. On February 13, 2014, Thermoset's counsel requested that GAF provide a privilege log for the documents and explain the circumstances surrounding the "inadvertent" disclosure. February 13, 2014 email (DE 119-2).

As part of its January 8, 2015 supplemental document production, GAF provided to Thermoset 9 emails, substantially redacted, relating to the China Lake project. On January 20, 2015, Thermoset inquired about the redacted pages. On February 16, 2015, GAF confirmed that it had redacted information protected by the attorney-client privilege and informed Thermoset that it would be serving a supplemental privilege log.

The next day (February 17, 2015), GAF did serve on Thermoset a Supplemental Privilege Log (DE 119-3), identifying GAF 745 and GAF 815, as well as the 9 redacted emails,[4] as being protected by the attorney-client privilege. Thermoset moves the Court to conduct an *in camera* inspection of the 12 documents[5] identified on GAF's Supplemental Privilege Log to determine whether they are privileged communications.[6]

---

[4] These nine emails are identified as GAF 012669, GAF 012675, GAF 012740, GAF 012742, GAF 012745 (consisting of 2 emails listed separately), GAF 012745, GAF 012747, and GAF 012749.

[5] GAF's Supplemental Privilege Log identifies 12 privileged documents, as the 2 emails included as part of GAF 815 are listed separately.

[6] In a diversity action, state law governs the application of the attorney-client privilege. 1500 Brickell Assocs. v. Q.B.E. Ins. Co., 253 F.R.D. 697, 699 (S.D. Fla. 2008) (Garber, M.J.); Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 696-97 (S.D. Fla. 2007) (Torres, M.J.). Under Florida Statute § 90.502(2), a client possesses the privilege to refuse disclosure of confidential communications made during the rendition of legal services to the client. That statute applies to both communications from the client to the attorney and from the attorney to the client. A communication is confidential if it is not intended to be disclosed to third persons. Fla. Stat. § 90.502(1). "But, because corporate claims of attorney-client privilege are treated with more suspicion, the Florida Supreme Court in Southern Bell Tel & Tel Co. v. Deason [632 So. 2d 1377 (Fla. 1994)] held that to assert attorney-client privilege a corporate" must make an additional showing." 1500 Brickell Assocs., 253 F.R.D. at 699. To sustain the attorney-client privilege, a corporation must demonstrate:

> (1) the communication would not have been made but for the contemplation of legal services; (2) the employee making the communication did so at the direction of his or her corporate

Seven of the nine redacted emails are identified on the Supplemental Privilege Log as communications between GAF's in-house attorney (Marcus) and outside attorneys hired by GAF to represent it on an unrelated (non-suit) complaint about a project in China Lake, California, located in the Mojave Desert. According to the Supplemental Privilege Log, all of these emails were related to settlement negotiations, legal strategy, and/or resolution of the China Lake claim. The two remaining redacted emails are identified as communications between the same outside attorneys and a GAF employee regarding settlement of the China Lake complaint. And GAF 745 is identified as an email communication from GAF's outside attorney to GAF's in-house attorney regarding settlement negotiations and legal strategy pertaining to China Lake. Thermoset acknowledges that these documents appear from the descriptions in GAF's log to be privileged.[7] It nevertheless requests that the Court inspect the documents to confirm that they are, in fact, privileged. The Court declines to do so with respect to these 10 emails. An *in camera* inspection of every document on a log that appears facially privileged merely to confirm its privileged nature, without a sufficient basis (as here), would be an ill-advised

---

> superior; (3) the superior made the request of the employee as part of the corporation's efforts to secure legal advice or services; (4) the content of the communication relates to the legal services being rendered; and the subject matter of the communication is within the scope of the employee's duties; (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

Deason, 632 So. 2d at 1383.

[7] "When communications appear on their face to be privileged the party seeking disclosure bears the burden of proving they are not." Shell Oil Co. v. Par Four P'ship, 638 So. 2d 1050, 1050-51 (Fla. 5th DCA 1994).

use of limited judicial resources.

GAF 815, however, merits closer attention. Unlike the emails discussed above, the two emails that comprise GAF 815 are not communications between GAF attorneys or communications between GAF's attorney and its corporate executives. Rather, they are communications between two GAF employees – GAF's VP of Technical Services (Pierce) and GAF's CEO (Tafaro). A copy of one of these emails was sent to GAF's in-house attorney (Marcus), and a copy of the other was sent to attorney Marcus and to GAF's Chief Financial Officer ("CFO) (John Rebele). Copying an attorney on an email does not necessarily render the communication privileged. Because the Court does not have sufficient information to determine whether GAF 815 is protected by the attorney-client privilege, it will inspect these two emails *in camera*.

Additionally, Thermoset argues that even were the Court to find that the documents at issue are protected by the attorney-client privilege, GAF has waived the privilege by failing to timely file a privilege log. Nothing in the Federal Rules of Civil Procedure, this District's Local Rules, or this Court's November 18, 2014 Order required GAF to serve a privilege log within a specific time period or risk waiving the privilege for an untimely filing of a privilege log.[8] See Mitsui Sumitomo Ins. Co., No. 09-21208, 2011 WL 2682958, at *5 (S.D. Fla. July 11, 2011) (Goodman, M.J.) ("Plaintiff correctly notes that no federal rule requires production of a privilege log (much less filing it with the court) or mandating waiver

[8] Both Federal Rule of Civil Procedure 26(b)(5)(a) and Local Rule 26.1(g)(B) require production of a privilege log; however, neither provides a timetable for its production nor specifies sanctions for a delay in production. And this Court's November 18, 2014 Order requiring GAF's production of certain documents is silent as to the production of a privilege log.

as the sanction for non-production or untimely production of a log.") (citing Bankers Sec. Ins. Co. v. Symons, 889 So.2d 93, 95 (Fla. 5th DCA 2004) ("no federal rule requires production of the log along with the response or dictates waiver as a sanction")).

As one district court has noted:

> The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents. A survey of district court rulings reveals a wide divergence on whether the privilege log must be produced at the time the written response is due pursuant to Rule 34 to preserve the privilege. The only United States Court of Appeals to explicitly construe the relationship between Rule 26(b)(5) [requiring a privilege log] and Rule 34 [requiring a response to request for production within 30 days] is the Ninth Circuit in Burlington N. & Santa Fe. Ry. Co. v. United States Dist. Court for the Dist. of Montana, 408 F.3d 1142 (9th Cir. 2005).

Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g Inc., 230 F.3d 688, 695 (M.D. Fla. 2005). In Burlington, the Ninth Circuit rejected a *per se* rule that a failure to produce a privilege log within 30 days (that is, at the time a response to a document request is due), waives the privilege asserted. Instead, the Burlington Court set forth several factors to be applied "in the context of a holistic reasonableness analysis," using the 30-day period as a default guideline. Id. at 1149. The relevant factors are:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents . . .; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

Id.

In determining whether GAF has waived the attorney-client privilege with respect to the 12 documents identified on its February 17, 2015 Supplemental Privilege Log, Thermoset urges the Court to apply the Burlington factors.[9] See Mitsui, 2011 WL 2682958, at *5 ("Courts in [the Eleventh Circuit] have generally followed the Ninth Circuit's approach to waiver articulated in Burlington . . . .").[10] Thermoset contends that GAF's privilege log was due on December 5, 2014 – the same date its discovery responses were due. It argues that GAF waited two months (for GAF 745 and GAF 815) and two and a half months (for the nine redacted emails) to inform Thermoset that these documents were privileged and, therefore, GAF untimely produced its Supplemental Privilege Log. According to Thermoset, "[w]hile document production in most construction-related cases may be extensive, there is nothing particularly difficult or challenging about this matter that would otherwise justify GAF's untimely disclosure of the privilege log" and that therefore "GAF has waived any attorney-client privilege associated with the documents on its February 17, 2015 privilege log." Motion at 13 (DE 119).

With respect to the first Burlington factor – assertion of privilege to enable opposing party and court to ascertain whether document is privileged – GAF argues that its Supplemental Privilege Log accurately identifies and sufficiently provides the information required by Federal Rule 26(b)(5) and Local Rule 26.1(g)(3)(B). GAF also argues that the

---

[9] "Although state law governs the existence of a privilege in a diversity case, the time to assert such privilege is a matter of procedure, which is governed by federal law." Rynd v. Nationwide Mut. Fire Ins. Co., No. 8:09-CV-1556-T-27TGW, 2010 WL 5161838, at 4 (M.D. Fla. Dec. 14, 2010).

[10] GAF appears to agree that the Burlington factors should be applied, as it addresses these factors in its Response.

second Burlington factor – the timeliness of the assertion of the privilege – is satisfied. Although Thermoset contends that the December 5, 2014 due date for production of documents is the appropriate date from which to measure timeliness, GAF counters that with respect to GAF 745 and GAF 815 the more appropriate date is February 2, 2015 – the date GAF's counsel learned the documents had been inadvertently produced; GAF produced its Supplemental Privilege Log 15 days later. With respect to the 9 redacted emails, GAF notes that it provided its privilege log 38 days after it produced the emails on January 9, 2015. With respect to the third Burlington factor – the magnitude of the document production – GAF notes that together with RSG[11] it has produced 10,000 documents in this litigation.[12] And with respect to the fourth (and final) Burlington factor – circumstances making responding to discovery unusually hard or easy – GAF contends that Thermoset is being less than candid in its assertion that this case is not difficult or challenging. GAF notes that in a motion to continue Thermoset asserted that "[t]his is a complex construction defect case . . . ." Response at 12-13 (quoting Motion to Continue (DE 95)) (emphasis added).

After carefully considering the parties' respective arguments and the totality of the Burlington factors, the Court does not find that the timing of GAF's production of its Supplemental Privilege Log was so unreasonable as to warrant the harsh sanction of waiver of the attorney-client privilege, which privilege has been described as "a cornerstone of the entire judicial/legal system in this country." Adega v. State Farm Fire & Cas. Ins.

---

[11] Defendants GAF and RSG are represented by the same counsel herein.

[12] According to Thermoset, GAF has produced approximately 9,300 pages of documents, with 17 designated as privileged.

Co., No. 07-20696-CIV, 2008 WL 1009719, at *2 (S.D. Fla. Apr. 9, 2008) (Brown, M.J.).

Finally, Thermoset argues that GAF has waived the attorney-client privilege as to GAF 745 and GAF 815 by producing those documents. Federal Rule of Civil Procedure 502(b) governs waiver of inadvertently produced documents.[13] See Luna Gaming-San Diego, LLC, v. Dorsey & Whitney, LLP, No. 06cv2804 BTM (WMc), 2010 WL 275083, at *4 (S.D. Cal. Jan. 13, 2010) ("Federal Rule of Evidence 502(b) governs waiver of privilege in federal proceedings."); Rhodes v. Young Women's Christian Ass'n of Greater Pittsburgh, No. 09-261, 2009 WL 3319820, at *2 (W.D. Pa. Oct. 14, 2009) ("Inadvertent production issues are governed by Fed.R.Evid 502(b)."). Under Rule 502(b), the disclosure of a communication or document protected by the attorney-client privilege or work product doctrine that is made in a federal proceeding does not operate as a waiver if the following elements are satisfied: "(1) the disclosure is inadvertent: (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[14] Fed. R. Ev. 502(b). All three elements set forth in Rule 502(b)

---

[13] Rule 502(b) applies in a federal proceeding "even if state law provides the rule of decision." Fed. R. Ev. 502(f).

[14] Rule 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis of the claim. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present

must be met to prevent a waiver of privilege. Heriot v. Byrne, 257 F.R.D. 645, 654 (N.D. Ill. 2009). The disclosing party bears the burden of proving that the elements of Rule 502(b) have been met. Luna Gaming, 2010 WL 275083, at *4; Silverstein v. Federal Bureau of Prisons, No. 07-cv-02471-PAB-KMT, 2009 WL 4949959, at *10 (D. Colo. Dec. 14, 2009); United States v. Sensient Colors, Inc., No. 07-1275 (JHR/JS), 2009 WL 2905474, at *3 (D.N.J. Sept. 9, 2009).

The first element of Rule 502(b) requires that the disclosure of privileged documents be "inadvertent"; the rule, however, does not define that term. Courts considering whether a disclosure of privileged documents is inadvertent have taken two different approaches. Some courts considering the question have ruled that a party's subjective intent is not sufficient to establish that a disclosure is inadvertent; rather, these courts look at several factors to determine whether the "inadvertent" element has been satisfied, including the total number of documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced. See, e.g., Sensient Colors, 2009 WL 2905474, at *3; Peterson v. Bernardi, 262 F.R.D. 424, 429-30 (D.N.J. 2009); Heriot , 257 F.R.D. at 658-660.

Other courts have taken a simpler approach, "essentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." Coburn Group, LLC v. Whitecap Advisors LLC, 640 F. Supp. 2d 1032, 1037-38 (N.D. Ill. 2009); accord Amobi v. District of Columbia Dep't of

---

the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Corrections, 262 F.R.D. 45, 53 (D.D.C. 2009). The court in Amobi explained the rationale of this approach:

> Other courts have found that Rule 502(b) provides for a more simple analysis of considering if the party intended to produce a privileged document or if the production was a mistake. This interpretation seems to be in line with one of the goals of the drafting committee: to devise a rule to protect the privilege in the face of an innocent mistake. Additionally, defining inadvertent as mistaken comports with the dictionary definition of the word: "Of persons, their dispositions, etc.: Not properly attentive or observant; inattentive, negligent, heedless . . . Of actions, etc.: Characterized by want of attention or taking notice,; hence, unintentional." There is every reason to suppose that Congress uses this definition. Additionally, permitting "inadvertence" to be a function of, for example, the amount of information that had to be reviewed or the time taken to prevent the disclosure melds two concepts, "inadvertence" and "reasonable efforts" that should be kept distinct. One speaks to whether the disclosure was intended while the other speaks to what efforts were made to prevent it.

Id. at 53 (internal citations omitted). This Court concurs with the rationale of Amobi and, therefore, accepts GAF's representation that the production of the two emails at issue was inadvertent, that is, a mistake and unintentional.

The second Rule 502(b) element requires that the producing party take reasonable steps to prevent disclosure of privileged documents. In determining whether this element has been satisfied, courts consider several factors, including the methodology of precautions used to review for privileged documents, the scope of discovery, the number of documents to be reviewed, and any time constraints for production. See, e.g., Coburn, 640 F. Supp. 2d at 1038-40; Heriot, 257 F.R.D. at 660-61. Here, GAF's counsel represents that he personally inspected the documents that the Court had ordered to be produced. In so doing, he flagged privileged documents, including GAF 845, and

instructed his staff to set aside those flagged documents. Although flagged as privileged, his staff inadvertently produced GAF 815. As to the scope of discovery and the number of documents to be reviewed, GAF states that its "counsel did not review the China Lake documentation in isolation. Rather, it was personally reviewed along with other documentation responsive to RFP 34." The Court notes that in its December 5, 2014 initial production of documents (when GAF's attorney would have conducted his privilege review), GAF produced approximately 1,000 pages in response to Request No. 34, relating to complaints at other Projects, in addition to the other documents the Court had ordered GAF to produce in response to other document requests. Considering these factors, the Court finds that Rule 502(b)'s second element has been satisfied.

The final element of Rule 502(b) requires that the producing party take prompt remedial efforts to rectify the inadvertent disclosure. Rule 502(b)(3) "does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake." Fed. R. Ev. 502(b) Advisory Committee Notes. But "the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Id.; See also Heriot, 257 F.R.D. at 660-61 (citing Rule 502(b) Advisory Committee Note and observing that the producing party has no duty to review documents after providing them to the opposing party). "[T]he relevant time under subpart (b)(3) is how long it took the producing party to act after it learned that the privileged or protected document had been produced." Coburn, 640 F. Supp. 2d at 1041. As the court in Heriot observed, "how the disclosing party *discovers and rectifies* the disclosure is more important than *when* after the inadvertent disclosure the discovery occurs." 257 F.R.D. at 662

(emphasis in original). Here, GAF's attorney represents that he first became aware of the inadvertent disclosure of GAF 745 and GAF 815 on February 2, 2015, while he was preparing for depositions in this case scheduled for the week of February 9, 2015. On the same day that he discovered the inadvertent disclosure, GAF's attorney informed Thermoset's attorney that these documents were protected by the attorney-client privilege and had been inadvertently produced. He additionally requested that Thermoset destroy the documents. February 2, 2015 email (DE 119-1). Clearly, GAF's attorney took prompt remedial action as soon as he became aware of the inadvertent disclosure. Hence, Rule 502(b)'s third element has also been satisfied.

GAF having met all elements of Rule 502(b), the Court finds that the inadvertent disclosure of GAF 745 and GAF 815 did not act as a waiver of the attorney-client privilege.

Based on the foregoing, Thermoset's Motion for *In Camera* Review to Determine Whether Attorney-Client Privilege Applies to Certain GAF Documents and Whether GAF Waived the Privilege by Violating This Court's Order and Request for Hearing (DE 119) is GRANTED only to the extent that the Court will conduct an *in camera* review of GAF 815. Accordingly, on or before April 10, 2015, GAF shall submit GAF 815 to the undersigned's chambers located at the United States Courthouse, Room 109, 299 East Broward Blvd.,

Fort Lauderdale, Florida 33301. Thermoset's Motion is DENIED in all other respects, including Thermoset's request for a hearing.

DONE AND ORDERED in Fort Lauderdale, Florida, this 8th day of April 2015

BARRY S. SELTZER
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record