UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60268-CIV-COHN/SELTZER

THERMOSET CORPORATION, f/k/a
THERMOSET ROOFING CORP.,
a Florida corporation,

      Plaintiff,

vs.


BUILDING MATERIALS CORP. OF AMERICA
d/b/a GAF MATERIALS CORPORATION,
a Delaware corporation, and ROOFING
SUPPLY GROUP ORLANDO, LLC,
a Delaware limited liability company,

      Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

THIS CAUSE is before the Court on Defendants' Verified Motion for an Award of Reasonable Attorneys' Fees and Costs Not Taxable Under 28 U.S.C. § 1920 (DE 174) and was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida. For the reasons set forth below, the undersigned RECOMMENDS that Defendants' Verified Motion for an Award of Reasonable Attorneys' Fees and Costs Not Taxable Under 28 U.S.C. § 1920 be GRANTED in part and DENIED in part.

    I.    <u>BACKGROUND</u>

This action arose out of an allegedly defective roofing adhesive. Plaintiff Thermoset is a roofing contractor that was hired to install a roof system at the Lynden Pindling International Airport in Nassau Bahamas (the "Project"). Defendant GAF is a manufacturer

of roofing materials and systems that Thermoset allegedly consulted for the purpose of obtaining specifications of appropriate materials to use for the Project.   Defendant RSG is a distributor of GAF's roofing products.  Thermoset purchased certain roofing materials and components, including a particular water-based adhesive, from GAF, through RSG. Thereafter, the roof material failed, allegedly as a result of the defective adhesive recommended by GAF and RSG.  Thermoset alleged that it incurred substantial expense to repair and modify the roof.  In an Amended Complaint, Thermoset asserted claims for breach of express and implied warranties and for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

On March 6, 2015, pursuant to Florida Rule of Civil Procedure 1.442 and Florida Statute § 768.79, Defendants served on Plaintiff separate Proposals for Settlement (DE 174-1 pp. 4-10)).  GAF's proposal for settlement was in the amount of $175,000, and RSG's proposal for settlement was in the amount of $5,000.  Simultaneously, Defendants filed notices of serving the proposals (DE 127 and 128).  Plaintiff did not accept either proposal.

On April 9, 2015, the District Court granted Defendants' motion for summary judgment (DE 166) and entered a final judgment (DE 167) in Defendants' favor and against Plaintiff on all claims.[1]  Thereafter, Defendants' filed the instant Verified Motion for an Award of Reasonable Attorneys' Fees and Costs Not Taxable Under 28 U.S.C. § 1920

---

[1] On September 14, 2015, Plaintiff filed a Notice of Appeal (DE 181) of the District Court's grant of summary judgment and final judgment; that appeal is pending before the United States Court of Appeals for the Eleventh Circuit.  Notwithstanding the pending appeal, the court retains jurisdiction to decide the instant fee motion.  See Rothenberg v. Sec. Mgmt. Co., 677 F.2d 64, 64 (11th Cir. 1982) (ruling that district court was not divested of jurisdiction to decide an attorney's fee motion by filing of appeal).

("Motion") (DE 174).  Plaintiff has responded to the Motion (DE 175), and Defendants have

replied thereto (DE 176).  The Motion, therefore, is ripe for decision.

II.     DEFENDANT'S VERIFIED MOTION FOR ATTORNEY'S FEES
        AND COSTS NOT TAXABLE UNDER 28 U.S.C. § 1920

Pursuant to Florida Statute § 768.79 (commonly referred to as Florida's "Offer of

Judgment" statute), Defendants move for an award of attorney's fees in the amount of

$250,460, for the period commencing March 6, 2015, through April 30, 2015.  In support,

Defendants have submitted counsel's detailed billing records (DE 174-1, pp. 17-70), as

well as the declaration of each attorney and paralegal for whom fees are sought. (DE 174-

1, pp. 72-93).

A.     Entitlement to Attorney's Fees

Florida Statute § 768.79(1),[2] provides in pertinent part:

> In any civil action for damages filed in the courts of this state,
> if a defendant files an offer of judgment which is not accepted
> by the plaintiff within 30 days, the defendant shall be entitled
> to recover [its] reasonable costs and attorney's fees incurred
> . . . from the date of filing of the offer if the judgment is one of
> no liability or the judgment obtained by the plaintiff is at least
> 25 percent less than such offer. . . .

Fla. Stat. § 768.79(1) (emphasis added).[3]  The statute "shifts fees to encourage parties to

---

[2]  A federal court sitting in diversity (as here) applies the substantive law of the
forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The Eleventh Circuit has held
that Florida Statute § 768.79(1) applies in diversity actions in Florida's federal courts
because the statute is "substantive law for Erie purposes." Horwitch v. Diamond Aircraft
Indus., Inc., 645 F.3d 1254, 1258 (11th Cir. 2011); see also Jones v. United Space
Alliance, L.L.C., 494 F.3d 1306, 1309 (11th Cir. 2011) (same); Menchise v. Akerman
Senterfitt, 532 F.3d 1146, 1150 (11th Cir. 2008) (same).

[3]  "Although the language of the statute indicates that the statute is triggered upon
the filing of an offer, Florida courts interpreting the statute have held that the statute is
triggered instead upon service of the offer." Hendrix v. Evenflo Co., Inc., No.

3

settle cases without a trial and to sanction parties who unreasonably reject settlement offers." Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1372 (M.D. Fla. 2010). Here, on March 6, 2015, Defendant GAF served on Plaintiff a proposal of settlement of $175,000, and on that same date, Defendant RSG served on Plaintiff a proposal for settlement of 5,000.  Plaintiff failed to accept either proposal.  And the District Court subsequently entered a judgment in favor of Defendants on all Plaintiff's claims.  Hence, the requirements of Fla. Stat. § 768.79(1) for obtaining an award of "reasonable costs and attorney's fees" have been met.

The Offer of Judgment statute also imposes procedural requirements as to the content of an offer.  Under Florida Statute § 768.79(2), the offer must: be in writing;  name the offeror and the offeree; and state the amount offered (including the amount to settle a claim of punitive damages, if any).  Here, both GAF's and RSG's settlement proposals meet these requirements.  See Proposals for Settlement (DE 174-1, pp. 4-10).

Where an offer of judgment satisfies the requirements of Florida Statute § 768.79(1) and (2), an attorney fee award is mandatory, unless the court finds that the defendant's offer was not made in good faith.  Fla. Stat. § 768.79(7)(a) ("If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith.  In such case, the court may disallow an award of costs and attorney's fees."); see also McMahan v. Toto, 311 F.3d 1077, 1083 (11th Cir. 2002) ("[T]he sole basis for which a court can deny an entitlement to attorney's fees is if it determines that [the] offer is not made in good faith.") (quoting Levine v. Harris,

---

3:07cv133/MCREMT, 2011 WL 1299874, at *1 n.5 (N.D. Fla. Mar. 31, 2011).

791 So. 2d 1175, 1177 (Fla. 4th DCA  2001)); Eagleman v. Eagleman, 673 So. 2d 946,

947 (Fla. 4th DCA 2006) ("The [offer of judgment] statute was interpreted by this court in

Schmidt v. Fortner, 629 So.2d 1036, 1040 (Fla. 4th DCA 1993), to mean 'that the

legislature has created a mandatory right to attorney's fees, if the statutory prerequisites

have been met.'  Once the statutory prerequisites have been met, the only discretion

afforded the trial court by section 7(a) is the authority to disallow the attorney fee award

when an offer is not made in 'good faith.'").  Plaintiff does not contest that Defendants

made their settlement proposals in good faith, and the record does not suggest otherwise.

Indeed, Plaintiff acknowledges that Defendants are entitled to reasonable attorney's fees

pursuant to Florida Statute § 768.79.

B.    Amount of Reasonable Attorney's Fees

From the commencement of this litigation[4] Defendants were represented by the law

firm of Kubicki Draper.  In December 2014, Defendants retained an additional law firm,

Thornton, Davis & Fein, P.A. ("Thornton Davis"), "to assist in preparing for and participating

in the trial of this matter."  Motion at 2 (DE 174). Defendant seeks attorney's fees totaling

$250,460 for the services of 5 attorneys and 2 paralegals with these two law firms.[5]

"Just as a federal court must apply state law [in a diversity case] to determine

whether a party is entitled to fees, it must also apply state law to resolve disputes about the

---

[4]  Plaintiff originally brought his action in state court; on February 3, 2014, Defendant
GAF removed the case on the basis of diversity jurisdiction.

[5]   More specifically, Defendants seek $61,230 in fees for the services of two
shareholders, an associate, and a paralegal with Kubicki Draper and $189,230 in fees for
the services of a senior partner, a junior partner, and a paralegal with Thornton Davis

5

reasonableness of fees." Kearney, 713 F. Supp. 2d at 1373.[6]  But as the Kearney Court noted, "[t]he Florida Supreme Court . . . has turned the law full circle by adopting the federal lodestar method, rather than a state rule, to determine what constitutes 'reasonable' attorney's fees." Id. (citing Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985), modified by Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990)).

To establish a lodestar amount, a court must ascertain the number of hours an attorney reasonably expended on the litigation and then multiply that figure by a reasonable hourly rate.  Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988); Rowe, 472 So. 2d at 1150.  The lodestar amount may then be adjusted to reach a more appropriate fee amount.  Norman, 836 F.2d at 1302; Rowe, 472 So. 2d at 1151.  The lodestar method "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A. *ex rel*. Winn, 559 U.S. 542, 550 (2010) (emphasis in original).  The fee applicant bears the burden of documenting both the reasonable hourly rates and the number of hours reasonably expended.  ACLU of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).  But, as the Supreme Court has made clear, "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do

---

[6]  Under the Florida offer of judgment statute, the offeror is to be awarded a "reasonable" attorney's fee, "calculated in accordance with the guidelines promulgated by the [Florida] Supreme Court, incurred from the date the offer was served."  Fla. Stat. § 768.79(6)(a).

rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time."  Fox v. Vice, 563 U.S. 826, __, 131 S. Ct. 2205, 2216 (2011).

1.   Reasonable Hourly Rates

The Court must first determine the reasonable hourly rates for Defendants' attorneys.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Norman, 836 F.2d at 1299; see also Holman v. Student Loan Xpress, Inc., 778 F. Supp. 2d 1306, 1316 (M.D. Fla. 2011) (stating, "[t]he general rule is that the relevant market for purposes of determining the reasonable hourly rate for attorney's services is the place where the case is filed") (internal quotation marks and citation omitted).

 The Norman Court discussed the showing that is necessary for a fee applicant to discharge its burden of demonstrating reasonable rates:

> Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate.  Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence.

836 F.2d at 1299.

Neither Defendants' fee motion nor the declarations of counsel submitted in support include any independent expert opinion or any "direct evidence of charges of lawyers under similar circumstances."  Id.  However, where a fee petition is inadequate, "the court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with

7

or without the aid of witnesses as to value." Id.

Each timekeeper for whom fees are sought has described his or her educational background and professional experience. See Declarations (DE 174-1, pp. 72- 93).  The charts below summarize the pertinent information:

### Kubicki Draper

| Timekeeper | Position | Years Experience[7] | Claimed Hourly Rate[8] |
|---|---|---|---|
| G. William Bissett | shareholder | 34 | $200 |
| Steven Cornman | shareholder | 11 | $200 |
| Israel Fajardo | associate | 1 | $175 |
| Raffaella Rocchi | paralegal | 11 | $100 |

Plaintiff has not objected to any of the hourly rates claimed by the timekeepers at Kubicki Draper.  And the undersigned agrees that the hourly rates claimed by these attorneys and the paralegal are comparable to or even less than those charged by other attorneys with similar experience in the South Florida legal community.

---

[7]  The years of experience provided are approximate as of the time the services (for which fees are sought) were rendered.

[8]  The hourly rates claimed by the attorneys and the paralegal at Kubicki Draper are based on the hourly rates actually charged.

Thornton Davis

| Timekeeper | Position | Years Experience | Claimed Hourly Rate[9] |
|------------|----------|------------------|------------------------|
| Frederick J. Fein | senior partner | 25 | $650 |
| Daniel R. Lever | junior partner | 8 | $400 |
| Daphnee Jones | paralegal | 17 | $200 |

Plaintiff objects to the hourly rates claimed by the timekeepers at Thornton Davis as excessive.  On March 5, 2015, Defendants and Thornton Davis entered into a written alternative fee agreement.  In accordance with the agreement, Thornton Davis agreed to charge Defendants the following hourly rates: attorney Fein - $325; attorney Lever - $240; and paralegal Jones - $125.  The agreement, however, also provided that "should anyone other than GAF or RSG be required to pay [Thornton Davis'] attorneys' fees, the hourly rates would be the above mentioned discounted rates or (b) such reasonable rates as is determined by the court, whichever is higher, and GAF/RSG would be obligated to then pay TDF that court-awarded reasonable amount." Alternative Fee Agreement (DE 174-1, p. 2).  Defendants contend that they "are entitled to recover attorneys' fees at the above stated hourly rates pursuant to the alternative fee agreement with [Thornton Davis]."

---

[9]  According to Defendants, the hourly rates claimed by the attorneys and the paralegal at Thornton Davis are based on two state court orders awarding fees to attorneys at that firm.  See DE 174-1, pp. 12-15).  A review of those orders reveals that attorney Lever was awarded fees in 2010 at a $225 hourly rate and was awarded fees in 2015 at a $400 hourly rate.  Attorney Fein was not awarded fees in either of those cases; two other attorneys, however, (a "Mr. Davis" and a "Mrs. Friedman") were awarded fees in 2015 at hourly rates of $750 and $550.  The orders also awarded fees for unidentified paralegals at hourly rates of $125 and $140.  As Plaintiff correctly notes, these orders do not provide any context; nor do they reveal the type or complexity of the case, the similarity to this case, or the terms of any fee agreements; therefore, the orders have little (if any) persuasive value.

Motion at 5 n.1 (DE 174).”  In support, Defendants cite First Baptist Church of Cape Coral, Florida, Inc. v. Compass Construction, Inc., 115 So. 3d 978, 980-985 (Fla. 2013), in which the Florida Supreme Court found an “alternative fee recovery clause”[10] (similar to the agreement in the instant case) valid and enforceable, even though the hourly rate claimed exceeded that charged and billed to the client.  The First Bapist case, however, does not hold (as Defendants appear to suggest) that the Court is required to calculate fees based on the claimed hourly rates merely because an alternate fee agreement exists.  Indeed, the alternative fee agreement at issue here provides that the hourly rates will be either the discounted rates or such reasonable rates as determined by the court, whichever is higher. As the First Baptist Court stated: “Once a fee-shifting statute or contract triggers a court-awarded fee, the trial court is constrained by Rowe and its progeny in setting a fee that must be reasonable.  This alleviates any concern that enforcing an alternative fee recovery clause will result in the non-prevailing party paying an unreasonable fee.”  Id. at 982.

Based on the Court’s own knowledge as to the prevailing hourly rates charged in similar cases in the Southern District of Florida, the undersigned concludes that the following hourly rates are reasonable, given the experience, skills, and reputation of Thornton Davis’ attorneys and paralegal: attorney Fein - $475; attorney Lever- $325; and paralegal Jones - $125.

2.      Number of Hours Reasonably Expended

The Court must next determine the number of hours reasonably expended by

---

[10]   As noted by the First Baptist Court, such a clause “generally provides for an attorney’s fee of the greater or either (i) a specified fee if the fee is paid by the client or (ii) a court-awarded reasonable fee if the fee is paid by a third-party pursuant to a fee-shifting provision.”  115 So. 3d at 981.

Defendants' counsel.   "'Reasonably expended' means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute. . . . [T]he magnitude of the case should be a consideration.'"   Centex-Rooney Constr. Co. v. Martin Co., 725 So. 2d 1255, 1258 (Fla. 4th DCA 1999) (quoting In re Estate of Platt, 586 So. 2d 328, 333-34 (Fla. 1991)).   A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity."   Norman, 836 F.2d at 1303; see also Rowe, 472 So. 2d at 1151 ("Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee.").   "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights."   Norman 836 F.2d at 1301; Rowe, 472 So. 2d at 1150 ("Counsel is expected . . . to claim only those hours that he could properly bill to his client.").   Thus, fee applicants are required to use "billing judgment."   Norman, 836 F.2d at 1301.   In ascertaining the number of hours reasonably expended, a court must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed.   Id.

Here, Defendants seek compensation for a total of 724.7 hours expended by the above timekeepers at Kubicki Draper and Thornton Davis, spanning the (approximate) two-month period from March 3, 2015, through April 30, 2015.[11]   More specifically, Defendants state that the following hours were expended by their attorneys and paralegals:  attorney Bissett - 13.3; attorney Cornman - 236.2; attorney Fajardo - 45.6; attorney Fein - 131;

---

[11]   The three attorneys and the paralegal at Kubicki Draper expended 328.6 hours and the 2 attorneys and the paralegal at Thornton Davis expended 396.1 hours.

attorney Lever - 255.3; paralegal Rocchi - 33.5; and paralegal Jones - 9.8.   Plaintiff challenges the number of hours Defendants' attorneys and paralegals expended as excessive, redundant, and/or unnecessary.

Plaintiff first argues that Defendants are not entitled to attorney's fees for the 34 hours expended[12] on matters relating to a separate indemnity suit filed by Defendants against Henkel (the adhesive manufacture).[13]   Plaintiff argues that this time was unnecessary to defend against its claims in this action.   Defendants reply that they "were forced to file an indemnification case against the actual manufacturer of the allegedly defective adhesive *because* Plaintiff filed suit against Defendants."   Reply at 8 (DE 176). (emphasis in original).   According to Defendants, "[h]ad Plaintiff not filed suit against Defendants, Defendants would not have incurred these expenses."   Id.   The undersigned is not persuaded by Defendants' argument.   Defendants have not cited any authority that would permit the Court in this action to award attorney's fees for work incurred in a separate action.   Accordingly, Defendants' time expended on the Henkel litigation should be disallowed.

Plaintiff next argues that 39 hours expended by Defendants' counsel after entry of the judgment, including hours expended litigating the amount of attorney's fees, should be excluded.   Under Florida law (unlike federal law), time incurred litigating the entitlement to

---

[12]   According to Plaintiff, Kubicki Draper expended 15.3 hours, and Thornton Davis expended 18.7 hours.   See Docket Entries 175-1and 175-2 for a listing of the time entries relating to the Henkel litigation to which Plaintiff objects.

[13]   On March 10, 2015, Defendants filed the lawsuit in the Ninth Judicial Circuit in and for Orange County, Florida (Case No. 2015-CA-2259).   That case was subsequently removed to the Middle District of Florida (Case No. 6:15-cv-00548-ACC-GJK).

attorney's fees is compensable, although the time incurred litigating the fee amount is not. State Farm & Cas. Co. v. Palma, 629 So. 2d 830, 833 (Fla. 1993); see also McMahan v. Toto, 311 F.3d 1077, 1085-86 (11th Cir. 2002) (concluding that in awarding fees under Florida's offer of judgment statute, trial court had erred in not reducing the fee award by time spent in establishing amount of fees, citing State Farm, 629 So. 2d at 833); Lumpkin v. Scottsdale Ins. Co., No. 8:11-cv-2455-T-24 MAP, 2015 WL 1708875, at *3 (M.D. Fla. Apr. 15, 2015) (applying Florida law in awarding attorney's fees, court disallowed time incurred in litigating amount of fees); Chavez v. Mercantil Commerce Bank, N.A., No. 10-23224-Civ, 2015 WL 1363888, at *5-6 (S.D. Fla. Jan. 9, 2015) (Torres, M.J.) (applying Florida law, court disallowed "fees on fees").   Because Plaintiff has never disputed Defendants' entitlement to attorney's fees, it argues that any time incurred in seeking attorney's fees cannot be recovered.  In reply, Defendants assert that "Plaintiff's argument ignores the fact that it was necessary for Defendants to file the necessary documentation to establish entitlement.  In other words, Plaintiff's recognition that Defendants are entitled to fees and costs did not occur until after Defendants applied to the Court for fees and costs."  Reply at 8 (DE 176) (emphasis added).  Yet, Defendants' own fee motion belies that assertion.  Their "Certificate of Good Faith Effort to Resolve Issue by Agreement," inserted at the end of their fee motion, states that the parties conferred on May 22, 2015, and June 5, 2015 and were able to resolve, inter alia, that "Defendants are entitled to an award of reasonable attorneys' fees and certain costs not taxable under  § 1920 pursuant to Florida Statute § 768.79 incurred after March 6, 2015. . . ."  Motion at 7 (DE 174). Accordingly, Defendants knew before filing the instant fee  motion that their entitlement to attorney's fees was  not  contested.   Moreover,  only  (approximately)  one-half  page  of

13

Defendants' fee motion addressed the issue of entitlement.  More specifically, Defendants did little more than quote Florida Statute § 768.79, assert that state law applied in a diversity action (citing one case for that proposition), and declare that they are entitled to fees under the state statute pursuant to their proposals for settlement.  At best, therefore, Defendants may recover only a minimal amount of time expended in preparing their fee motion.

In objecting to 39 "post-judgment" hours, Plaintiff has not specifically identified those hours he contends were expended on litigating the amount of fees and those hours expended on other post-judgment matters.  See Docket Entry 175-1 and Docket Entry 175-2.  The undersigned, however, independently reviewed counsel's time records and concludes that approximately 25 hours were expended on litigating the amount of fees; those hours, therefore, should be excluded.[14]

In addition to the time expended litigating the amount of fees, Plaintiff objects to other post-judgment time.  After reviewing Defendants' time records, the undersigned concludes that additional time (approximately 3 hours) should be excluded for exchange of correspondence regarding the possibility of Plaintiff filing a state court action for fraudulent misrepresentation and for work relating to preparing a certificate of interested persons and a corporate disclosure statement.

Plaintiff also argues that time should be excluded to account for Thornton Davis' (alleged) "unit billing."  Unit billing is "the practice of 'billing certain tasks at a predetermined

---

[14]   The undersigned has not excluded the time expended in researching legal issues, including entitlement to fees (5.5 hours), and has credited .7 hours expended in drafting the fee motion to account for time relating to entitlement to fees before Defendants had become aware that Plaintiff was not contesting that issue.

amount instead of the actual time spent.'" <u>Knight v. Paul & Ron Enters., Inc.</u>, No. 8:13-cv-310-T36EAJ, 2015 WL 2401504, at *7 (M.D. Fla. May 19, 2015) (quoting <u>Lumpay</u>, 2015 WL 1708875, at *2); <u>see also</u> <u>Brown v. Costales</u>, 579 So. 2d 161, 162 (Fla. 3d DCA 1991) ("Unit billing is a practice where the attorney bills a predetermined number of minutes for a given task."). Plaintiff contends that the "vast majority" of Thornton Davis's time entries are billed in half-hour increments, "strongly suggesting that 'unit billing' (by rounding up actual time spent to the nearest half hour) was utilized." Response at 9 (DE 175). Defendants reply that the time recorded by Thornton Davis is "true and accurate" and was not "predetermined"; rather, its time was "recorded after tasks were completed and was based upon the actual amount of time taken to complete the task." Reply at 11 (DE 176). The undersigned's review of Thornton Davis's records reveals that the "vast majority" of its time entries were <u>not</u> billed at half-hour increments. Indeed, the time entries that are less than a half-hour exceed the half-hour time entries, separate and apart from the many time entries that exceed an hour. The undersigned, therefore, concludes that no time should be disallowed for the alleged "unit billing."

Plaintiff next argues that it was unnecessary for Defendants to have three attorneys (Fein, Lever, and Cornman) attend a March 31, 2015 pretrial conference.[15] According to Plaintiff, the 4 hours billed by attorney Lever, and the 4 hours billed by attorney Cornman should be disallowed. Plaintiff also argues that the 5.5 hours billed by attorney Fein to attend the conference should be reduced to 4 hours. Defendants reply that "Plaintiff's argument ignores the importance of the mandatory pre-trial conference required by Local

---

[15]   The record does not reflect that this pretrial conference was conducted by the Court.

Rule 16.1(c) and Fed.R.Civ.P. 16(a).  In light of the multimillion dollar claim against [them] all trial counsel appeared for the mandatory conference."  Reply at 8 (DE 176).  The undersigned agrees with Plaintiff that it was not necessary for Defendants to have three attorneys attend the conference.  Accordingly, the time expended by attorneys Lever and Cornman should be disallowed.  Further, Defendants have not explained the discrepancy between the 4 hours claimed by both attorneys Lever and Cornman and the 5.5 hours claimed by attorney Fein for attending the conference.  Therefore, attorney Fein's time should be limited to 4 hours.

Plaintiff additionally contends that time expended by Defendants in preparing various documents filed (or intended to be filed in the record) is excessive and duplicative.  These documents include: (1) the joint pretrial stipulation; (2) response to Plaintiff's motion and supplemental motion to exclude expert testimony; (3) documents relating to summary judgment motions; and (4) documents relating to motions in limine.

1.      Joint Pretrial Stipulation.      According to Plaintiff, Defendants expended 34.2 hours in preparing the Joint Pretrial Stipulation.  A review of the time entries to which Plaintiff objects (DE 175-3), however, reveals that the 34.2 hours includes the 13.5 hours Defendants' counsel spent attending the March 31, 2015 pretrial conference to which Plaintiff has already objected and the Court has considered *supra*.  Excluding the time attending the pretrial conference reduces the time claimed in preparing the pretrial stipulation to 20.4 hours.  Defendants reply that the pretrial statement included "a detailed statement of its case, a summary of pleading issues, a list of all undisputed motions, a statement of facts that required no proof at trial, and a statement of issues to be decided by the Court."  Reply at 8 (DE 176).  According to Defendants, a significant amount of time

16

was expended in drafting the pretrial stipulation because "it was intended to provide the Court with a factual, evidentiary, and legal roadmap before trial." Id. The undersigned does not find that 20.4 hours is excessive for preparing the Joint Pretrial Stipulation.

2.      Response to Plaintiff's Motions to Exclude Expert Testimony. On February 27, 2015, Plaintiff filed a 7-page Motion to Limit Testimony of Defendants' Expert Colin Murphy (DE 22). In that Motion, Plaintiff stated that it challenged only a "narrow aspect" of the expert's opinions – his opinion as to Plaintiff's costs to repair, replace, and enhance portions of the Project's roof. Plaintiff argued that the expert was not qualified to render an opinion as to the cost of roofing contractors in the Bahamas because he had not priced a job there in more than 20 years and that his opinion was not reliable because there was no evidence of a relationship between the expert's opinion and actual market costs in the Bahamas. On March 16, 2015, Plaintiff filed a 10-page supplemental motion (DE 131) to limit expert Murphy's testimony premised on the expert's attempt to rely on information received after the fact and expert discovery deadlines. Subsequently, Defendants filed a single response to both Plaintiff's motions relating to expert Murphy's damages opinions. Plaintiff objects to 80.5 hours he contends was expended in reviewing its motions to exclude expert testimony and preparing a response thereto. See Docket Entry 175-4 for a listing of the time entries to which Plaintiff objects.

Defendants do not challenge Plaintiff's estimate of the time expended. The undersigned's review of Defendants' billing records, however, reveals that not all of the 80.5 hours to which Plaintiff objects was devoted to responding to its motions to exclude expert testimony. First, 9 hours were expended on Defendants' own motion to exclude Plaintiff's expert testimony. And 8 hours were expended on reviewing and drafting a

17

response to Plaintiff's Motion for Leave to Supplement its Motion to Limit Testimony of

Defendants' Expert Colin Murphy (DE 126). Excluding these 17 hours from the 80.5 hours

to which Plaintiff objects reduces the time expended in reviewing and preparing a response

to 63.5 hours.[16]  Defendants assert that responding to Plaintiff's motion was "an arduous

and important task as expert testimony in a complex product defect case is imperative, as

recognized by this Court's Order Granting Defendants' Motion for Summary Judgment [DE

166 at 2]."[17]   Reply at 9 (DE 176).   While Defendants' assertion may be true, the

undersigned nevertheless concludes that 63.5 to respond to Plaintiff's motions to exclude

---

[16]  Defendants counsel expended 14.5 hours of the 63.5 hours reviewing its own
expert's (Murphy's) report and deposition testimony.  Plaintiff contends that these hours
were expended by Thornton Davis's counsel "getting up to speed."  Defendants counter
that they compensated Thornton Davis for its time to "get up to speed" well before issuing
the proposals for settlement in March 2015 (the beginning date for which fees are sought).
According to Defendants, the time Thornton Davis's counsel expended on reviewing
Murphy's file would have been incurred by any attorney in responding to Plaintiff's motions
regardless of any prior involvement in the case.

[17]  The District Court granted summary judgment in Defendants' favor because
Plaintiff's election not to present expert testimony was fatal to its claims, stating:

> This case is a commercial dispute involving alleged chemical
> and physical inadequacies in an adhesive used to secure an
> airport roof in a hurricane-prone part of the world.  The issues
> of whether the adhesive was defective, and whether those
> defects cause the airport roof to fail or cause other harms to
> Thermoset, involve complex scientific and technical issues
> beyond the understanding of the typical juror.  Expert
> testimony therefore is required to help the jury understand
> these essential elements of Thermoset's claims.  However,
> Thermoset had decided to pursue this case without the
> assistance of an expert to opine on the issues of defects or
> causation.  Thermoset therefore is incapable of prevailing on
> its claims as a matter of law, and Defendants are entitled to
> summary judgment.

Order Granting Defendants' Motion for Summary Judgment at 11 (DE 166).

18

expert testimony is excessive and that a substantial amount of this time should be disallowed.

3.     Summary Judgment Motions.  During the course of the litigation, Defendants filed a Motion for Final Summary Judgment (DE 116) and Defendants filed a Motion for Partial Summary Judgment as to Count VIII of Plaintiff's Amended Complaint (DE 118). In addition, Plaintiff filed a Renewed Motion for Partial Summary Judgment Directed to Appropriate Measure of Damages (DE 121).  Plaintiff objects to the time expended by Defendants on certain filings relating to these summary judgment motions.  See Docket Entry 175-5 for a listing of the time entries to which Plaintiff objects.

a.     Defendants' Response to Plaintiff's Renewed Motion for Summary Judgment

Plaintiff argues that the 49.2 hours expended in reviewing Plaintiff's Renewed Motion for Summary Judgment Directed to Appropriate Measure of Damages and Defendants' Affirmative Defenses and filing a response (DE 133) thereto is excessive. According to Plaintiff, its Renewed Motion (DE 121) was nearly identical to its original motion for partial summary judgment (DE 91) and, therefore, it should not have taken Defendants 50 hours to revamp their response to the Renewed Motion.  Plaintiff suggests that 20 hours would be reasonable.

b.     Defendants' Reply to Plaintiff's Response to Defendants' Motion for Final Summary Judgment

Plaintiff also objects to the 89.6 hours Defendants expended in reviewing Plaintiff's response (DE 134) to Defendants' summary judgment motions and preparing a reply brief (DE 149).   Plaintiff argues this time is excessive and disproportionate to the work product in the reply brief; it suggests that 30 hours would be reasonable.

19

c.    Defendants' Reply to Plaintiff's Response to Defendants' Motion for
Partial Summary Judgment

Additionally, Plaintiff argues that the 12.4 hours Defendants expended in addressing

Plaintiff's response (DE 134) to Defendants' Motion for Partial Summary Judgment as to

Count VIII (the FDUTPA claim) and preparing a reply (DE 149) is excessive.  Plaintiff notes

that Defendant GAF raised substantially the same grounds and arguments in its prior

motion for summary judgment (DE 90) and that Plaintiff's response to that prior motion (DE

97), as well as Defendants' reply (DE 105) thereto were both substantially similar to the

subsequent response and reply.   Given the narrow issue (the FDUTPA claim) and the

replication of earlier arguments, Plaintiff contends that 5 hours would be a reasonable

amount of time for this task.

In reply, Defendants note that their motion for final summary judgment consisted of

18 pages and included 69 pages of exhibits and that their reply (which was prepared after

reviewing Plaintiff's 20 page response and 271 pages of exhibits) consisted of 15 pages

and included 57 pages of exhibits.  They further note that their motion for partial summary

judgment was 8 pages and included 21 pages of exhibits and that their reply was 6 pages

and included 10 pages of exhibits.   They argue that the time related to drafting these

"voluminous" motions and replies was reasonable and necessary, especially in light of the

results obtained.  Moreover, Defendants additionally note that their response to Plaintiff's

motion for partial summary judgment consisted of 27 pages and included 529 pages of

exhibits.  Although not expressly stated, the undersigned presumes that Defendants also

contend that this time was not excessive.

The  undersigned  has  carefully  reviewed  the  content  of  each  of  the  parties'

20

respective summary judgment motions, responses, and replies, including the original filings relating to summary judgment motions.  In addition, the undersigned has reviewed the time entries to which Plaintiff objects.  After this review, the undersigned finds that the 12.4 hours Defendants expended in reviewing Plaintiff's response (DE 134) to Defendants' Motion for Partial Summary Judgment as to Count VIII (the FDUTPA claim) and preparing a reply (DE 149) is not excessive.  The undersigned, however, does find that the 49.2 hours expended in reviewing Plaintiff's 21-page Renewed Motion for Summary Judgment Directed to Appropriate Measure of Damages and Defendants' Affirmative Defenses and filing a 27-page response (DE 133) thereto is excessive, particularly given that similar arguments were made by both Plaintiff's and Defendants' in their original filings relating to damages and the affirmative defenses.  Further, the undersigned finds that the 89.6 hours expended in reviewing Plaintiff's response (DE 134) to Defendants' summary judgment motions and preparing a reply brief (DE 149) is grossly excessive.  As just one example of such excessiveness, the two attorneys at Thornton Davis spent more than 30 hours reviewing and analyzing Plaintiff's 23-page response.  Accordingly, a substantial amount of time relating to summary judgments should be disallowed.

4.      Motions in Limine.  During the course of the litigation, Defendants filed two motions in limine and Plaintiff filed two motions in limine.  Plaintiff contends that the time expended by Defendants in preparing their motions in limine is excessive and disproportionate to the work product contained therein.  Plaintiff also objects to the time Defendants expended in responding to his motions in limine as excessive.  See Docket Entry 175-6 for a listing of the time entries to which Plaintiff objects.  More specifically, Plaintiff objects to the following time expended by Defendants:  25.1 hours in preparing a

16-page motion in limine (DE 156) seeking to preclude at trial evidence of or reference to other incidents, occurrences, or claims; 22 hours in preparing a 20-page omnibus motion in limine (DE 157) seeking to exclude from trial 17 types of evidence;[18] 19.7 hours reviewing and preparing a response to Plaintiff's 11-page motion in limine (DE 160) to preclude at trial evidence obtained by Defendants after the fact discovery deadline without leave of court; and 27 hours reviewing and preparing a response to Plaintiff's 18-page motion in limine (DE 161) to admit evidence regarding other complaints of adhesive failure.[19]

After a careful review of the content of each of Defendants' motions in limine and the time entries related to each motion, the undersigned does not find the time claimed is excessive or duplicative. With respect to the time Defendants expended relating to Plaintiff's motion in limine to preclude evidence obtained by Defendants after the fact discovery deadline, it is unclear whether the entire 19.7 hours to which Plaintiff objects was, in fact, related to this motion. First, 0.7 hours were expended in drafting a motion in limine relating to similar incidents, not a motion in limine relating to evidence obtained after the discovery deadline, and the time was expended before Plaintiff filed either of its motions in limine. Similarly, another 1.2 hours were expended in communicating with outside counsel "re MIL" before Plaintiff filed its motions in limine. This time, therefore, should not be excluded from the 19.7 hours objected to by Plaintiff. Additionally, the time

---

[18]  Defendants subsequently amended their omnibus motion (DE 162) to include a Local Rule 7.1 certificate of conferring that was inadvertently omitted in their original omnibus motion.

[19]  Before Defendants could file their responses to Plaintiff's motions in limine, the District Court granted their summary judgment motion.

objected to includes 8.9 hours by attorney Cornman for "Continued preparation for trial. Meeting with Fred Fein and Dan Lever to discuss responses to MILs, continue development of trial themes, testimony, core defenses, and supporting exhibits."  It is likely that only a small portion of these hours were devoted to discussing responses to Plaintiff's motion in limine relating to evidence obtained after the discovery deadline.  Excluding the majority of these 8.9 hours, as well as the 1.9 hours noted above, the undersigned believes that approximately 10 hours were expended on matters relating to Plaintiff's first motion in limine and concludes that this time is not excessive.   The undersigned, however, does find that the 27 hours expended by Defendants' counsel in reviewing and analyzing Plaintiff's motion in limine to admit evidence regarding other complaints of adhesive failure and supporting evidence (10 hours) and drafting and revising a response (17 hours) thereto is excessive, given that Defendants had already expended approximately 25 hours preparing a motion in limine to exclude essentially the same evidence that Plaintiff sought to admit in its motion in limine.  The undersigned, therefore, concludes that at least 15 hours of this time should disallowed.

Plaintiff additionally objects to the 53 hours expended by attorney Fein for trial preparation over a 6-day period (April 4, 2015, through April 9, 2015).  Plaintiff contends that from Fein's time records it is impossible to determine whether his trial preparation time was duplicative of tasks billed by other attorneys.  Of the 53 trial preparation hours, on April 4, 2015, Fein expended 4 hours reviewing and analyzing exhibits for use at trial and on "opening."  The undersigned concludes that this time was sufficiently described and is not excessive and, therefore, is compensable.  The time entries for each of the next five days (April 5, 6, 7, 8, and 9) totaling 49 hours, however, merely state "plan and prepare for trial."

23

The undersigned agrees that these vague time entries do not permit the Court to determine whether the time expended is duplicative or reasonable. The Court, therefore, would be justified in disallowing the entire 49 hours.[20]  Yet, as Plaintiff notes, attorney Cornman's time records account for at least a part of attorney Fein's 49 hours preparing for trial. Corman's time records reflect that on three days (April 6,  7, and 8) he and Fein met for a total of 26.1 hours "to develop trial themes, evidence, exhibits, order of witnesses, designations, and demonstrative aids."  The undersigned, therefore, concludes that these 26.1 hours should be credited and that the remaining 22.9 hours should be disallowed.

Finally, Plaintiff objects to the 27 hours paralegal Rocchi expended in "summarizing" deposition exhibits (as opposed to deposition testimony) in preparation for trial.  It contends that this time was unnecessary as the exhibits had already been selected and/or were "known" by counsel.  Defendants reply that this case involved the production of a multitude of documents, the majority of which were attached as exhibits to depositions.  According to Defendants, the summaries of the exhibits would have permitted quick attorney review before each witness's trial testimony and would have facilitated speedy access to relevant documents at trial.   The undersigned does not find that this time was either unnecessary or excessive.   Accordingly, no time should be excluded for compiling deposition summaries.

---

[20]   Courts have ruled that vague descriptions are inadequate to support a fee motion.  See, e.g., Walker v. U.S. Dep't of Hous. and Urban Dev., 99 F.3d 761, 773 (5th Cir. 1996) ("terse listings," such as "library research," "analyzing documents," "reading background documents," and "phone interviews," are "woefully inadequate to support any fee application"); Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1379 (M.D. Fla. 2010) ("A court may eliminate or reduce an award where a time entry is excessively vague.").

Having determined that the hours claimed warrant reduction, the Court must ascertain the amount of such reduction.  Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  Barnes, 168 F.3d at 428.  Under Norman, 836 F.2d at 1301, courts were required to enumerate the specific hours to be disallowed and to articulate the reasons for their disallowance.  Subsequently, however, the Eleventh Circuit ruled that where a fee application is voluminous, a court need not engage in an hour-by-hour analysis.  Loranger v. Stierheim, 10 F.3d 777, 783 (11th Cir. 1994) ("Where fee documentation is voluminous. . . an hour-by-hour review is simply impractical and a waste of judicial resources.").  And "[w]hen a district court finds that the number of hours claimed is unreasonably high [as here], the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the number of hours by an across-the-board cut," but not both.  Bivins v. Wrap it Up Inc., 548 F.3d 1348, 1350 (11th Cir. 2008);  see also Cornett v. Lender Processing Servs, Inc., No. 3:12-cv-233-J-99TJC-MCR, 2013 WL 6643873, at *5 (M.D. Fla. Dec. 17, 2013) ("In evaluating a party's fee request, a court may conduct an hour-by-hour analysis of the fees requested, or, if appropriate, apply an across-the-board reduction.  An across-the-board method is often preferable so as to avoid the 'pick and shovel work' of pouring through voluminous billing records.") (internal citation omitted).  Here, the undersigned concludes that a 25% across-the-board reduction for each timekeeper is warranted to account for excessive, redundant, and unnecessary hours. Applying a 25% reduction for each timekeeper yields the following reasonable hours:   attorney Bissett - 9.98; attorney Cornman - 177.15; attorney Fajardo - 34.2; attorney Fein - 98.25; attorney Lever - 191.48;

paralegal Rocchi - 25.13; and paralegal Jones - 7.35.

### 3.    Lodestar Amount

Multiplying the number of hours counsel reasonably expended by the reasonable hourly rates results in a lodestar amount of $155,742.50, calculated as follows:

| Timekeeper | Hourly Rate | Hours | Fees |
|---|---|---|---|
| G. William Bissett | $200 | 9.98 | $   1,996.00 |
| Steven Cornman | $200 | 177.15 | $ 35,430.00 |
| Israel Fajardo | $175 | 34.20 | $   5,985.00 |
| Frederick J. Fein | $475 | 98.25 | $ 46,668.75 |
| Daniel R. Lever | $325 | 191.48 | $ 62,231.00 |
| Raffaella Rocchi | $100 | 25.13 | $   2,513.00 |
| Daphnee Jones | $125 | 7.35 | $      918.75 |

Lodestar amount - $155,742.50

### 4.    Additional Factors

In addition to the lodestar analysis, Florida law requires a court to consider the following six factors when assessing the reasonableness of a fee request:

1.    The then apparent merit or lack of merit in the claim.

2.    The number and nature of offers made by the parties.

3.    The closeness of questions of fact and law at issue.

4.    Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

5.    Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

26

6.     The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(7)(b)(1)-(6).

After considering these factors, the undersigned finds that neither a further reduction nor an enhancement of the (reduced) lodestar amount is warranted.

C.     Costs

In addition to attorney's fees, Defendants seek costs under Fla. Stat. § 768.79(1). The statute authorizes "reasonable costs" incurred from the date of the offer of judgment (or proposal for settlement).[21]   In their Motion, Defendants request the following costs:

---

[21]  Courts in this District and the Middle District of Florida have ruled that in diversity cases (such as here) the recovery of costs under Fla. Stat. § 768.79 is governed by federal law and, therefore, only those costs identified in 28 U.S.C. § 1920 are recoverable.  See, e.g., Primo v. State Farm Auto. Ins. Co., No. 3:13-cv-64-J-32MCR, 2015 WL 5474349, at *2 (M.D. Fla. Sept. 15, 2015) ("[A] party may be entitled to costs pursuant to § 768.79, but that statute's reference to 'reasonable costs' and the advisory Florida guidelines for taxation of costs are not the kind of 'explicit' statutory authorization needed for the Court to disregard the general rule that costs recoverable in federal courts are limited to those set forth in 28 U.S.C. § 1920."); Jalosinski v. Dorel Juvenile Group, Inc, No. 2-13-cv-371, 2015 WL 4395406, at *5 (M.D. Fla. July 16, 2015) ("While the recovery of attorney's fees under the [Florida] offer-of-judgment statute presents a substantive matter for state law, the recovery of costs under that statute does not similarly raise a substantive issue.  The offer-of-judgment statute leaves unchanged the 'traditional view' that the recovery of costs presents a procedural matter for federal law.") (internal citation omitted); Hartford Accident and Indem. Co. v. Crum & Forster Specialty Ins. Co., No. 10-24590-Civ, 2012 WL 5818138, at *5 (S.D. Fla. Nov. 15, 2012) (King, D.J.) (noting that "while the Offer of Judgment statute is substantive law for Erie purposes as to attorney's fees, it is only procedural law as to costs") (citing and discussing Kearney v. Auto-Owners Ins. Co., No. 8:06-cv-00595-T-24-TGW, 2010 WL 3062420 (M.D. Fla.  August 4, 2010)).

Although Defendants style the instant Motion as one for "Costs Not Taxable Under 28 U.S.C. § 1920," the costs they now seek are, in fact, the types of costs that are taxable under § 1920.  The undersigned notes that Defendants have previously sought § 1920 (DE 168) costs, and the undersigned has submitted a Report and Recommendation (DE 186) thereon, which is now before the District Court for its review.

$393.68 for local travel costs incurred by Thornton Davis; $462.30 for court and subpoena fees incurred by Thornton Davis; $272.10 for photocopying costs charged by Thornton Davis; and $355.50 for photocopying costs charged by Kubicki Draper.  However, in their "Certificate of Good Faith Effort to Resolve Issues by Agreement," inserted at the end of the instant Motion, Defendants state that they withdraw their request for travel costs.

Plaintiff first objects to the $462.30 claimed for "court and subpoena fees" because Defendants did not incur these costs in this action; rather, they were incurred in the Henkel indemnity litigation.  Just as Defendants failed to cite any authority supporting their argument that attorney's fees for work incurred in a separate action is recoverable, they have failed to cite any authority that costs related to that same action is taxable.  The undersigned, therefore, concludes that these costs should be disallowed.

With respect to the $355.50 photocopying charges sought by Kubicki Draper, Defendants note that they have previously moved for taxable costs under § 1920 (DE 168) requesting that the Court tax all photocopying costs incurred in this litigation.  According to Defendants, were the Court to grant that relief, the photocopying costs now sought "should not be taxed as that would be duplicative."  Motion at 7, n.15 (DE 174).  In their prior cost motion, Defendants sought $4,478.10 for internal or "in-house" photocopies. In the Report and Recommendation (DE 186) on that cost motion, the undersigned concluded that because the precise number of copies made only for counsel's convenience (and thus non-taxable) could not be determined and because the per page charge was too high only $2,239.10 of that amount should be taxed.  As the undersigned's prior Report and Recommendation is still before the District Court, the undersigned, therefore, does not make any further recommendation with respect to the duplicative photocopying costs now

28

sought by Kubicki Draper.

With respect to the $272.10 in-house photocopies sought by Thornton Davis, Defendants also indicate that were the District Court to grant the relief sought in their prior cost motion, the amount now sought "should not be taxed as that would be duplicative." Motion at 6, n.13 (DE 174).  A review of the underlying documentation supporting the photocopying charges (DE 168-5), however, appears to reflect photocopying charges only for Kubicki Draper;  Defendants did not submit any documentation relating to photocopying charges for Thornton Davis.   The undersigned finds that the documentation (DE 174-1, pp. 94-103) submitted by Thornton Davis in support of the photocopying charges now sought is insufficient  as it fails to identify the documents copied or the purpose of making the copies.  The undersigned, therefore, is unable to ascertain whether the copies were "necessarily obtained for use in the case" as is required by 28 U.S.C. § 1920(4).  The undersigned, therefore, declines to recommend that the $272.10 in photocopying charges for Thornton Davis be taxed.

<u>RECOMMENDATIONS</u>

Based on the foregoing, it is hereby RECOMMENDED that the District Court GRANT in part and DENY in part Defendants' Verified Motion for an Award of Reasonable Attorneys' Fees and Costs Not Taxable Under 28 U.S.C. § 1920 (DE 174).  More specifically, the undersigned RECOMMENDS that the District Court award Defendants attorneys' fees in the amount of $155,742.50 and that it disallow the costs sought in the entirety.                       .

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the

Honorable James I. Cohn, United States District Judge.  Failure to file objections timely

shall bar the parties from a *de novo* determination by the District Judge of an issue covered

in the report and shall bar the parties from attacking on appeal factual findings accepted

or adopted by the District Judge except upon grounds of plain error or manifest injustice.

See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson,

885 F.2d 790, 794 (1989).

      DONE AND SUBMITTED at Fort Lauderdale, Florida this 15th day of January 2016

BARRY S. SELTZER
United States Magistrate Judge


Copies to:

Honorable James I. Cohn
United States District Judge

All counsel of record